UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TIM M. JONES AND<br>RHONDA M. JONES | § § § | CIVIL ACTION NO: |
| *Plaintiffs* | § § | |
| v. | § § | |
| JAYCO, INC. AND<br>FORD MOTOR COMPANY | § § § § | |
| *Defendants* | § | JURY TRIAL REQUESTED |

## COMPLAINT

### I.  Parties

1.  Plaintiffs, MIKE M. JONES AND RHONDA M. JONES, are individuals that now and have been at all times a citizens of the state of California.

2.  Defendant, JAYCO, INC., hereinafter "JAYCO," is an Indiana corporation authorized to do and doing business in the State of Texas with its principal place of business located in Elkhart, Indiana and a citizen of the state of Indiana and is a warrantor of the recreational vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

JAYCO's agent for service of process is CT Corporation System, 334 North Senate Avenue, Indianapolis, IN, 46204.

3.  Defendant, FORD MOTOR COMPANY, hereinafter "FORD," is a Michigan corporation that was incorporated in the state of Delaware and is a citizen of the both the states of Michigan and Delaware. Its principal place of business is in Wayne County, Michigan and is the chassis manufacturer of the recreational vehicle that Plaintiffs purchased and is a merchant in goods

-1-

of the kind involved in this case.

FORD's agent for service of process is CT Corporation System, 334 North Senate Street, Indianapolis, IN, 46204.

## II.  Jurisdiction

4.  This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involve predominant issues of federal law.

This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.  Venue

5.  Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV.  Conditions Precedent

6.  All conditions precedents have been performed or have occurred.

### V. Facts

#### A. The Transaction

7. On February 1, 2022, Plaintiffs purchased a new 2022 JAYCO ENTEGRA ESTEEM bearing VIN: 1FDXE4FN1NDC33682, hereinafter "ENTEGRA," from LA MESA RV SERVICE CENTER.

The ENTEGRA was purchased primarily for Plaintiffs' personal use. The purchase price was $134,264.08. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See ***Hughes v. Segal Enterprises, Inc.*, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

#### B. Implied Warranties

8. As a result of the sale of the ENTEGRA by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the ENTEGRA would pass without objection in the trade under the contract description; and that the ENTEGRA was fit for the ordinary purpose for which such ENTEGRA are purchased.

9. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

#### C. Express Warranties

10. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the ENTEGRA

-3-

occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the ENTEGRA had, in fact, repaired the defects.

11. Plaintiffs' purchase of the ENTEGRA was accompanied by express warranties offered by the Defendants, ENTEGRA, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs's contract for purchase of the ENTEGRA.

12. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the ENTEGRA's warranty booklet and owners manual.

### D. Actionable Conduct

13. In fact, when delivered, the ENTEGRA was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following statement in the Plaintiffs' own words:

    **1. CORROSION UNDER FRAME DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

    **2. BOLT HEAD ARE BREAKING OFF DURING REPAIR DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

    **3. LEVELING JACK HARNESS RUSTED THROUGH DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

    **4. REAR AXLE LEAK DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

  **5. ANY AND ALL DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED ON ANY REPAIR ORDER.**

  **6. TOTAL OUT-OF-SERVICE DAYS - OVER 120."**

14. Since purchase, Plaintiffs have returned their ENTEGRA to the Defendants and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the ENTEGRA the more significant and dangerous conditions were not repaired. Defendants failed to repair the ENTEGRA so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the ENTEGRA continues to this day to exhibit some or all of the non-conformities described herein.

15. The defects experienced by Plaintiffs with the ENTEGRA substantially impaired its use, value and safety.

16. Plaintiffs directly notified the Defendants of the defective conditions of the ENTEGRA. Plaintiffs notified the Defendants that they wanted a rescission of the sale of ENTEGRA but the Defendants has failed and refused to buy back Plaintiffs' defective ENTEGRA.

## VI.  Causes of Action

**COUNT 1: VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.**

17. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

18. The ENTEGRA is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

19. Plaintiffs are "purchasers" of consumer goods as defined under the Song-Beverly

Consumer Warranty Act.

20. The Defendants are a "manufacturer" and "distributor" as defined under the Song-Beverly Consumer Warranty Act.

21. The sale of the ENTEGRA to Plaintiffs was accompanied by an express written warranty.

22. The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of the ENTEGRA and or can cause serious bodily injury or death.

23. Plaintiffs has tendered their ENTEGRA to the Defendant for repairs on numerous occasions in attempts to have the existing express warranties satisfied.

24. The Defendants has not repaired the non-conformities after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements.

25. Further, the sale of the ENTEGRA to Plaintiffs was accompanied by implied warranties that the ENTEGRA was merchantable and fit for a particular use.

26. Defendants has breached the implied warranties of merchantability and fitness for a particular use because the ENTEGRA when sold would not pass without objection in the trade.

27. Despite its breach of the express and implied warranties, the Defendants has refused Plaintiffs' demand for a refund or replacement.

28. By failure of the Defendants to remedy the defects as alleged above, or to issue a refund or replacement, the Defendants is in breach of their obligations under the Song-Beverly Consumer Warranty Act.

29. The Defendants's continuing breach of its obligations as set forth herein is willful pursuant to the Song-Beverly Consumer Warranty Act and as such, the Defendants is liable to Plaintiffs for civil penalties in an amount as set forth below.

30. Plaintiffs is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of the Defendants's misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:   VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

31. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

32. Plaintiffs are "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

33. Defendants is a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

34. The ENTEGRA is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

35. The express warranties more fully described hereinabove pertaining to the ENTEGRA is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

36. The actions of Defendants in failing to tender the ENTEGRA to Plaintiffs free of

-7-

defects and refusing to repair or replace the ENTEGRA tendered to Plaintiffs constitute a breach of the written and implied warranties covering the ENTEGRA and hence a violation of the Magnuson-Moss Warranty Act.

37. Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

38. As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth hereinabove, Plaintiffs have been damaged hereinabove in an amount in excess of $500,000.00 according to proof at trial.

39. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 4:   BREACH OF EXPRESS WARRANTIES**

40. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

41. In addition, the Defendants issued an expressed written warranty which covered ENTEGRA, and warranted that the ENTEGRA, was free of defects in materials and work quality at the time of delivery.

-8-

42. The Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs's ENTEGRA was free of defects in materials and work quality at the time of delivery.

43. As alleged above, the Defendants breached its warranties by offering for sale, and selling as safe to Plaintiffs a ENTEGRA that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

44. In breach of the foregoing warranties, the Defendants has failed to correct said defects.

45. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the ENTEGRA; costs of repairs; expenses associated with returning the ENTEGRA for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 5:   BREACH OF IMPLIED WARRANTIES**

46. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

47. The Defendants impliedly warranted that Plaintiffs' ENTEGRA which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

48. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants are unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the ENTEGRA had been driven for a period longer than the period of the written

warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

49. Because of the defects, Plaintiffs's ENTEGRA is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendants breached the implied warranty of merchantability.

50. The damages Plaintiffs have suffered are a direct and proximate result of Defendants's actions in this matter include, but are not limited to, diminution in value of the ENTEGRA; costs of repairs; expenses associated with returning the ENTEGRA for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## VII. Economic and Actual Damages

51. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a.. Out of pocket expenses, including but not limited to the money paid towards the note securing the ENTEGRA;

    b. Loss of use;

    c. Loss of the "benefit of the bargain";

    d. Diminished or reduced market value; and

    e. Costs of repairs.

## VIII. Attorney Fees and Costs

52. Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ

the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## IX.  Prayer

53.  For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a.  For general, special and actual damages according to proof at trial;

    b.  Rescinding the sale of the 2022 JAYCO ENTEGRA ESTEEM bearing VIN: 1FDXE4FN1NDC33682 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.  For incidental and consequential damages according to proof at trial;

    d.  Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

    e.  Any diminution in value of the ENTEGRA attributable to the defects;

    f.  Past and future economic losses;

    g.  Prejudgment and post-judgment interest;

    h.  Damages for loss of use of ENTEGRA;

    i.  Civil Penalties and/or Punitive damages;

    j.  Damages for mental anguish;

    k.  Attorney fees;

    l.  Costs of suit, expert fees and litigation expenses; and

    m  All other relief this Honorable Court deems appropriate.

## X. Demand for Jury Trial

54. Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS